UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW SACHS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION *and* CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>March 11, 2024 |

Plaintiff Andrew Sachs ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this class action complaint against Defendants Cigna Corporation and Cigna Health and Life Insurance Company (together, "Defendants" or "Cigna") and alleges as follows:

**INTRODUCTION**

1. This action arises from Cigna's illegal scheme to systematically, wrongfully, and automatically deny its insureds the thorough, individualized physician review of claims guaranteed to them by law and, ultimately, the payments for necessary medical procedures owed to them under Cigna's health insurance policies.

2. Cigna is a major medical insurance company in the United States, with 18 million members nationwide. *See* Matej Mikulic, Statista, *Number of Cigna's medical customers from 2016 to 2022, by type* (Mar. 16, 2023), https://www.statista.com/statistics/985102/medical-customers-of-cigna/ [https://perma.cc/2PFW-DUNZ].

1

3. Cigna pledges that the company is "committed to improving the health and vitality" of its members. The Cigna Group, *The Cigna Group Company Profile* (2023), https://www.cigna.com/about-us/company-profile [https://perma.cc/GVB4-W9F6].

4. In reality, Cigna developed an algorithm known as PXDX, short for "procedure-to-diagnosis," that it relies on to enable its doctors to automatically deny payments in batches of hundreds or thousands at a time for treatments that do not match certain preset criteria, thereby evading the legally-required individual physician review process.

5. Relying on the PXDX system, Cigna's doctors instantly reject claims on medical grounds without ever opening patient files, leaving thousands of patients effectively without coverage and with unexpected bills.

6. The scope of this problem is massive. For example, over a period of two months in 2022, Cigna doctors denied over 300,000 requests for payments using this method, spending an average of just 1.2 seconds "reviewing" each request. Patrick Rucker et al., ProPublica, *How Cigna Saves Millions by Having Its Doctors Reject Claims Without Reading Them* (Mar. 25, 2023), https://www.propublica.org/article/cigna-pxdx-medical-health-insurance-rejection-claims [https://perma.cc/N5P5-GT3G].

7. The PXDX system saves Cigna money by allowing it to deny claims it in the past would have paid and by eliminating the labor costs associated with paying doctors and other employees for the time needed to conduct individualized, manual review for each Cigna insured.

8. Cigna also utilizes the PXDX system because it knows it will not be held accountable for wrongful denials. For instance, Cigna knows that only a tiny minority of policyholders (roughly 0.2%) will appeal denied claims, Karen Pollitz et al., KFF, *Claims Denials and Appeals in ACA Marketplace Plans in 2021* (Feb. 9, 2023), https://www.kff.org/private-

insurance/issue-brief/claims-denials-and-appeals-in-aca-marketplace-plans/ [https://perma.cc/8ZD9-5E7M], and the vast majority will either pay out-of-pocket costs or forgo the at-issue procedure.

9. Cigna rejected Plaintiff's and the Class members' claims using the PXDX system. Cigna failed to use reasonable standards in evaluating the individual claims of Plaintiff and the Class members and instead allowed its doctors to sign off on the denials in batches.

10. By engaging in this misconduct, Cigna breached its fiduciary duties, including its duty of good faith and fair dealing, because its conduct serves Cigna's own economic self-interest and elevates Cigna's interests above the interests of its insureds.

11. By bringing this action, Plaintiff seeks to remedy Cigna's past improper and unlawful conduct by recovering damages for Plaintiff and the Class members and to enjoin Cigna from continuing to perpetrate its scheme against its insureds.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which there is a diversity of citizenship between at least one Class member and one Defendant; the proposed Class exceeds 100 members; and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Moreover, Defendants reside in this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants regularly conduct business in this District, and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

14. Plaintiff Andrew Sachs is, and at all times relevant to this action has been, a citizen

of Nevada, residing in Las Vegas, Nevada. At all relevant times mentioned herein, Plaintiff was covered by a health insurance policy provided by Defendants.

15. Defendant Cigna Corporation is a Connecticut corporation headquartered at 900 Cottage Grove Road, Bloomfield, Connecticut 06002.

16. Defendant Cigna Corporation conducts insurance operations, representing to consumers that Cigna and its subsidiaries are a global health service organization. Defendant Cigna Corporation has a license to use the federally registered service mark "Cigna," markets and issues health insurance and insures, issues, administers, and makes coverage and benefit determinations related to health care policies nationally through its various wholly owned and controlled subsidiaries, controlled agents, and undisclosed principals and agents, including Defendant Cigna Health and Life Insurance Company.

17. Defendant Cigna Health and Life Insurance Company, incorporated in Connecticut, is a wholly owned subsidiary of Defendant Cigna Corporation, with its principal place of business at 900 Cottage Grove Road, Bloomfield, Connecticut 06002.

18. Defendant Cigna Health and Life Insurance Company markets and issues health insurance and insures, issues, administers, and renders coverage and benefit determinations related to health care policies.

## FACTUAL ALLEGATIONS

### Background

19. Defendants offered and sold health coverage to its consumers nationwide, including Plaintiff and the Class members.

20. Plaintiff and the Class members enrolled with Defendants to receive health insurance coverage.

21. Defendants provided Plaintiff and the Class members with written terms explaining the plan coverage Cigna offered them.

22. According to these terms, Cigna must provide benefits for covered health services and pay all reasonable and medically necessary expenses incurred by a covered member.

23. From the beginning of the applicable liability period to the present, thousands of Cigna insureds, through healthcare providers, submitted bills to Cigna for reasonable and medically necessary expenses covered by their plan terms.

24. However, Cigna's failure to "pay claims without conducting a reasonable investigation based upon all available information" is violative of Connecticut law. Conn. Gen. Stat. § 38a-816(6)(D).

25. In other words, Cigna's medical directors are required under law to examine patient records, review coverage policies, and use their expertise to decide whether to approve or deny claims to avoid unfair denials; its failure to do so is unlawful.

26. Defendants have deliberately failed to fulfill their obligation to review individual claims in a thorough, fair, and objective manner, instead denying the claims for medical expenses of their insureds without conducting *any* investigation.

27. Defendants utilize the PXDX system, which employs an algorithm to identify discrepancies between diagnoses and what Defendants consider acceptable tests and procedures for those ailments and automatically deny claims on those bases.

28. After the PXDX system denies claims, Cigna doctors then sign off on the denials in batches without opening each patient's files to conduct a more detailed review of, for example, the treatment/procedure at issue and related injuries, the patient's prior medical or surgical history, the chronology of medical events, or any ambiguities and complications.

29. Defendants wrongfully delegated their obligation to evaluate and investigate claims to the PXDX system, including determining whether medical expenses are reasonable and medically necessary.

30. In violation of Conn. Gen. Stat. § 38a-816(6)(D), Cigna is violating the law and wronging its insured by "refusing to pay claims without conducting a reasonable investigation based upon all available information."

31. Defendants fraudulently misled their insureds into believing their health plan would individually assess their claims and pay for medically necessary procedures.

32. Had Plaintiff and the Class members known Defendants would evade the legally required process for reviewing patient claims and delegate that process to its PXDX algorithm to review and deny claims, they would not have enrolled with Cigna.

33. Defendants' review system of their insureds' claims undermines the principles of fairness and meaningful claim evaluation, which insureds expect from their insurers.

**Plaintiff Andrew Sachs**

34. Plaintiff Andrew Sachs has been enrolled with Cigna for years through a prior employer, and his current policy with Cigna began in August 2023.

35. Within the time frame of Plaintiff Sachs' most recent Cigna policy, Plaintiff Sachs' neurologist submitted a prior authorization for a medication delivered through injection as the only course of treatment for Mr. Sachs' condition, as there is no other effective course of treatment ("Injection Request").

36. After submitting the Injection Request, Cigna responded that it required more information from Mr. Sachs' doctor, who quickly complied. Very shortly after the re-submission, Cigna denied coverage for the injection.

6

37. Following the denial, Plaintiff Sachs submitted more information to Cigna on a rush as the treatment is the only effective course for his condition. As of the filing of this Complaint, despite additional peer-to-peer reviews with Cigna, Cigna has now denied this medication no fewer than five times.

38. At this stage, Cigna has now requested additional tests and referred Plaintiff Sachs to facilities at UCLA and the Mayo Clinic, which are over 300 miles away from Mr. Sachs, who lives in a major metropolitan area in the first instance (Las Vegas, Nevada). The treatment Mr. Sachs seeks is vital for his condition and continued denials and re-routing to tests at very far distances continue to prolong the disease without effective treatment.

39. Due to Cigna's denial and delay of Mr. Sachs' treatment, Mr. Sachs is in advanced stages of his condition and has experienced continued neurological damage.

40. In addition, Plaintiff Sachs was recommended a PET scan for a neurological condition, and Cigna denied this request outright ("PET Scan Request"), citing the need for more information.

41. Plaintiff Sachs' then provided Cigna with a copy of his medical records and all other information requested, and noted that it was ordered by his doctor. Cigna then denied it again almost immediately and stated the request could only be completed on a "peer-to-peer" with the doctor, whose availability is limited. The denial came through in less than 24 hours.

42. Following this denial, Plaintiff Sachs called a number of departments within Cigna concerning this request, none of whom have been able to confirm that they actually read the updated report.

43. Cigna then stated to Plaintiff on his repeated phone calls concerning the "Injection Request" and the "PET Scan Request" that although such orders are in a "rush," they cannot do

anything about the speed of the requests following its denial within a very short time frame. Both treatments are needed for Mr. Sachs' debilitating condition.

44. Finally, on February 23, 2023, Cigna approved the PET scan for Mr. Sachs, which revealed that he was in the early stages of Alzheimer's disease and treatment was necessary to slow down the disease.

45. The PET Scan Requests' initial denial and logjam initiated by Cigna may have caused Mr. Sachs irreparable damage.

46. Upon information and belief, Defendants used the PXDX system to "review" and deny both the Injection Request and the PET Scan Request.

47. Upon information and belief, Defendants failed to have their doctors conduct a thorough, fair, and objective investigation into Mr. Sachs' claims and instead denied both based on the automated PXDX process.

## CLASS ALLEGATIONS

48. Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class and a subclass defined as follows:

**The Nationwide Class.** All persons who had purchased health insurance from Cigna in the United States from the beginning of the applicable liability period to the present. ("The Class").

49. Excluded from the Class are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

50.     Plaintiff reserves the right to alter the Class definitions as she deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Connecticut, and applicable precedent allow.

51.     **Numerosity.** The Class is so numerous that individual joinder of Class members herein is impracticable. Upon information and belief, members of the Class number in the hundreds of thousands or millions throughout the United States and Nevada.

52.     The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

53.     **Commonality and predominance.** Common questions and a common course of conduct dominate this action. Plaintiff and the Class had their claims automatically rejected by Cigna using the PXDX system without individualized evaluation of their medical records by Cigna's medical directors. As a result of this misconduct by Defendants, Plaintiff and the Class members have suffered injury in fact and have lost money.

54.     Common questions of fact and law which predominate over questions that may affect individual class members include the following:

  i.    whether Defendants automatically denied payment for claims submitted by insureds and/or healthcare providers without having a medical director examine patient records, review coverage policies, and use their expertise to decide whether to approve or deny claims;

  ii.   whether Defendants' denials of claims are based on its use of the PXDX system, which employs an algorithm to identify discrepancies between diagnoses of ailments and what Defendants consider acceptable tests and procedures for those ailments and automatically deny claims on those bases;

9

    iii.    whether Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies;

    iv.    whether Defendants have a practice of relying on the PXDX system to review and deny certain claims instead of having medical directors use their expertise to decide whether to approve or deny those claims; and

    v.    whether Defendants' delegation of patient claims review to the PXDX algorithm resulted in its failure to diligently conduct a thorough, fair, and objective investigation into determinations of claims for medical expenses submitted by insureds and/or healthcare providers.

55.    **Typicality.** Plaintiff's claims are typical of the claims of the Class and arise from the same common practice and scheme used by Defendants to deny the claims of the members of the Class. In each instance, Defendants used the PXDX system to review, process, and deny insured claims without the medical director's review.

56.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

57.    **Superiority.** A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

58.    Absent a class action, Defendants will likely retain the benefits of their wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative

action, the Class will continue to suffer losses and Defendants will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

59. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

60. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

61. **Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.

62. **Notice.** Plaintiff and his counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## COUNT I
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### Against All Defendants
### (On Behalf of Plaintiff and the Class)

63. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

64. Plaintiff brings this claim for breach of the implied covenant of good faith and fair dealing against all Defendants on behalf of the Class.

65. Plaintiff and the Class members entered into written contracts with Defendants,

11

which provided for coverage for medical services administered by healthcare providers.

66. Pursuant to the contracts, in exchange for insureds' premium payments, Defendants implied and covenanted that they would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of Plaintiffs' and the Class members' claims.

67. Defendants have breached their duty of good faith and fair dealing by, among other things:

> i. improperly delegating their claims review function to the PXDX system, which uses an automated process to improperly deny claims;
>
> ii. allowing their medical directors to sign off on the denials in batches without reviewing each patient's file; and
>
> iii. failing to have their medical directors conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials.

68. Defendants' practices as described herein violated their duties to Plaintiff and the Class members under the insurance contracts.

69. Defendants' practices as described herein violated their duties to Plaintiff and the Class members under Connecticut law.

70. Defendants' practices as described herein constitute an unreasonable denial of Plaintiff's and the Class members' rights to a thorough, fair, and objective investigation of each of their claims by a doctor and breach the implied covenant of good faith and fair dealing arising from Defendants' insurance contracts.

71. Defendants' practices as described herein further constitute an unreasonable denial

to pay benefits due to Plaintiff and the Class members in breach of the implied covenant of good faith and fair dealing arising from Defendants' insurance contracts.

72. Defendants' wrongful denial of Plaintiff's and the Class members' right to a thorough, fair, and objection investigation and wrongful denial of claims damaged Plaintiff and the Class members.

73. As a direct and proximate result of Defendants' breaches, Plaintiff and the Class members have suffered and will continue to suffer in the future economic losses, including the benefits owed under their health insurance plans, the interruption of Plaintiff's and the Class members' businesses, and other general, incidental, and consequential damages, in amounts according to proof at trial. Plaintiff and the Class members also seek statutory and pre- and post-judgment interest against Defendants and each of them.

74. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, and therefore Plaintiff and the Class members seek punitive damages against Defendants.

75. By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the present action. Plaintiff therefore seeks reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

## COUNT II
**Intentional Interference with Contractual Relations**
**Against All Defendants**
**(On Behalf of Plaintiff and the Class)**

76. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

77. Plaintiff brings this claim for intentional interference with contractual relations

against all Defendants on behalf of the Class.

78. Plaintiff and the Class members entered into written contracts with Defendants, whereby Defendants were required to pay for Plaintiff's and the Class members' medically necessary services rendered by healthcare providers.

79. Defendants were aware that they are bound by contracts under which they were required to authorize payments for medically necessary services rendered by healthcare providers to Plaintiff and the Class members.

80. Defendants knew and understood that Plaintiff and the Class members, by enrolling with Cigna, had entered into such contracts or had reasonable economic expectations.

81. Defendants intended to disrupt and interfere with the performance of Plaintiff's and the Class members' contracts by denying payments for medically necessary services without any basis.

82. Defendants knew that disruption and interference with the performance of Plaintiff's and the Class members' contracts were certain or substantially certain to occur when Defendants denied payments for medically necessary services without any basis.

83. Defendants' interference with Plaintiff's and the Class members' contracts was improper and based on false and misleading representations designed to enhance Cigna's profits through automated batch denial of claims.

84. Defendants' business practices and conduct described herein were intended by Defendants to cause injury to Plaintiff and the Class members, or the conduct was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff and the Class members, subjecting Plaintiff and the Class members to cruel and unjust hardship in conscious disregard of their rights.

85. Defendants' business practices and conduct did in fact cause injury to Plaintiff and the Class members.

86. Defendants' business practices and conduct were a substantial factor in causing Plaintiff's and the Class members' harm.

87. Defendants' misrepresentations, deceit, or concealment of material facts known to Defendants were done with the intent to deprive Plaintiff and the Class members of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression, or fraud, and Plaintiff and the Class members therefore seek punitive damages.

### COUNT III
**Unjust Enrichment**
**Against All Defendants**
**(On Behalf of Plaintiff and the Class)**

88. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

89. Plaintiff brings this claim for unjust enrichment against all Defendants on behalf of the Class.

90. By delegating the claims review process to the automated PXDX system, Defendants knowingly charged Plaintiff and the Class members insurance premiums for services that Defendants failed to deliver. This was done in a manner that was unfair, unconscionable, and oppressive.

91. Defendants knowingly received and retained wrongful benefits and funds from Plaintiff and the Class members. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and the Class members.

92. As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class members.

93.     Defendants' unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein.

94.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from arbitrarily denying their insureds medical payments owed to them under Cigna's policies in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under such circumstances makes it inequitable for Defendants to retain the funds and constitutes unjust enrichment.

95.     The financial benefits derived by Defendants rightfully belong to Plaintiff and the Class members. Defendants should be compelled to return in a common fund for the benefit of Plaintiff and the Class members all wrongful or inequitable proceeds received by Defendants.

96.     Plaintiff and the members of the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A.      certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.      declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.      declaring that Defendant has committed the violations of law alleged herein;

D.      providing for any and all injunctive relief the Court deems appropriate;

E.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in

accordance with applicable law;

  F. providing for any and all equitable monetary relief the Court deems appropriate;

  G. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

  H. awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

  I. awarding statutory and pre- and post-judgment interest to the extent the law allows; and

  J. providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Date: March 11, 2024    **MILLER SHAH LLP**

        By: */s/ Laurie Rubinow*
          James E. Miller
          Laurie Rubinow
          lrubinow@millershah.com
          jemiller@millershah.com
          65 Main Street
          Chester, CT 06412
          T: (866) 540-5505
          F: (866) 300-7367

          **REESE LLP**
          Michael R. Reese (*pro hac vice* to be filed)
          mreese@reesellp.com
          100 West 93rd Street, 16th Floor
          New York, New York 10025
          Telephone: (212) 643-0500
          Facsimile: (212) 253-4272

          **REESE LLP**
          George V. Granade (*pro hac vice* to be filed)
          ggranade@reesellp.com
          8484 Wilshire Boulevard, Suite 515
          Los Angeles, California 90211
          Telephone: (310) 393-0070
          Facsimile: (212) 253-4272

**REESE LLP**
Charles D. Moore (*pro hac vice* to be filed)
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**LAUKAITIS LAW LLC**
Kevin Laukaitis (*pro hac vice* to be filed)
*klaukaitis@laukaitislaw.com*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Telephone: (215) 789-4462

*Counsel for Plaintiff Andrew Sachs
and the Proposed Class*